UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| JAMES J. WARD<br><br>        Plaintiff,<br><br>v.<br><br>AMERICAN AIRLINES, INC.<br><br>        Defendant. | Civil Action No.: 05 CV 10239 MEL |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### Introduction

The Plaintiff, James J. Ward, filed this action as a small claims action in the East Boston District Court on or about January 10, 2005. In the concise state court small claims complaint form, Plaintiff, acting pro se, simply stated that an agreement by Defendant American Airlines, Inc. ("AA") to pay his medical bills between November 21, 2003 and July 6, 2004 was breached and that he was damaged in the amount of $2,000. AA removed the case to Federal Court, asserting jurisdiction under ERISA, and has attempted to characterize Plaintiff's pro se claim as an ERISA action. However, Defendant's Motion for Summary Judgment must fail because (1) it is procedurally defective under Rule 56 because it is unsupported by any affidavits, pleadings or authenticated exhibits as would be admissible in evidence; (2) if this case is governed by ERISA, Plaintiff's claim should be construed as an action by a plan participant to recover benefits or enforce rights under 28 U.S.C.A. §1132(a)(1)(B); (3) there are material factual

issues as to whether Plaintiff has been reimbursed for all of the claims for which he is seeking coverage; and (4) Plaintiff has exhausted his administrative remedies, or demonstrated that further efforts at exhaustion would be futile.

**Facts**

Plaintiff James J. Ward has been employed since 1988 by Defendant AA. In 2003, Plaintiff was a ramp supervisor at Logan Airport and a member of the Transport Workers Union of America, Local 507 which had a Collective Bargaining Agreement with AA. Ward has been a member in good standing of the Union since 1988. (Statement of Facts "SOF", para. 1-2).

In November of 2002, Plaintiff was diagnosed with fibromuscular displasia, a disease of the arteries which causes blood vessels to close and/or break. On April 5, 2003, Plaintiff was determined by AA to be totally disabled due to his medical condition and was informed by his treating physicians that he would be unable to work. Defendant AA placed Plaintiff on sick leave of absence on June 23, 2003. As an employee on sick leave of absence, Plaintiff was entitled to twelve (12) months continuation of his health insurance coverage after June 23, 2003. (SOF, para. 2).

On or about November 21, 2003, Defendant AA terminated Plaintiff from employment due to a purported misuse of employee flight benefits. (Defendant AA's Exh. 1). Plaintiff's status as an employee on sick leave and health insurance coverage was abruptly terminated by AA effective November 21, 2003. Plaintiff and his Union grieved this termination as a wrongful termination. (SOF, para. 3). The grievance was settled by a written agreement dated June 29, 2004 and signed by Plaintiff, a Union president and an AA representative on July 6, 2004. The Settlement Agreement

2

(Defendant's Exh. 2) is clearly prospective in nature. It provides that Plaintiff "will be reinstated" to his position and "returned to an unpaid sick leave of absence effective with the signing of this Agreement". (Defendant's Exh. 2, para. 1). The Agreement further provides that "health benefits will be restored to Mr. Ward effective with the signing of this agreement. Mr. Ward will be considered eligible to file any benefit claims that have been incurred during the time off payroll and they will be processed in accordance with the terms of the Health Plan". (Defendant's Exh. 2, para. 3; SOF, para. 5).

Plaintiff interpreted this Agreement as providing that, as of June 29, 2004 (the effective date of the Agreement), Plaintiff was placed back on sick leave status with seven months prospective health benefits coverage – i.e. coverage from June 29, 2004 through January 28, 2005. Additionally, American Airlines agreed as part of the settlement, that Plaintiff would be eligible to file benefit claims incurred during the more than seven months that he was "off payroll" – i.e. between November 21, 2003 and June 29, 2004, the effective date of the Agreement. (SOF, para. 6-7).

Defendant AA, in its pre-litigation communications with Plaintiff, seems to have taken the position that since the Settlement Agreement was signed more than seven months after Plaintiff was terminated, he in effect received no prospective medical coverage under the Settlement Agreement. According to Defendant AA's logic, Plaintiff was retroactively reinstated to sick leave status as of November 23, 2003 and that sick leave status expired on June 22, 2004, two weeks before the parties even signed the Agreement on July 6, 2004, and one week before the effective date of the Agreement. Such a construction is unreasonable and flies in the face of logic. The obvious interpretation of the Agreement was to reinstate Plaintiff for an additional seven months

3

coverage starting on the effective date of the Agreement, June 29, 2004, and running through January 28, 2005. To the extent that there were uncovered medical expenses incurred during Plaintiff's off payroll status, American Airlines (not the health insurer) agreed that his health benefits would be eligible for reimbursement under the Health Plan. It was incumbent on AA to notify the health insurer, the Harvard Pilgrim Health Care HMO ("HPHC"), of Plaintiff's reinstatement and eligibility for coverage. (SOF, para. 6-7).

Plaintiff submitted claims to HPHC for coverage of medical claims during the seven months Plaintiff was "off payroll". Some of these claims were denied by HPHC after the Settlement Agreement was signed because, according to HPHC, "these charges are for services provided after this patient's coverage was cancelled. Therefore they are not covered." The total of these bills is $712.43. (SOF, para. 8).

Plaintiff submitted all of the above bills to HPHC. They were rejected because, according to HPHC, Plaintiff's coverage had been cancelled. Thus AA had not taken steps to adequately inform HPHC that Plaintiff's cancelled health insurance was reinstated, at least for the time period between November 21, 2003 and June 29, 2004.

Plaintiff contacted AA's Human Resources Department by telephone and subsequently in writing to rectify this situation. In the Plan Summary distributed to its employees, AA identified itself as the Plan Administrator and instructed employees to contact AA's Human Resources Department in Fort Worth, Texas, for information. (SOF, para. 13). In addition to medical coverage, Plaintiff had other issues with AA concerning benefits relating to his leave of absence including short term disability

4

benefits through the Metropolitan Life Insurance Company, total disability benefits through the same insurer, flight benefits and employee stock programs. (SOF, para. 9).

AA's Human Resources Department employees expressed uncertainty and confusion to Plaintiff as to the effect of the Settlement Agreement on his status. Several of AA's employees did not appear to be aware of the Settlement Agreement at all. Plaintiff, at the request of AA's Human Resources Department employees, sent copies of the Settlement agrrement to them on two separate occasions so they could "research" his status. (SOF, paras. 10-11).

On October 5, 2004, an AA Human Resources employee informed Plaintiff by telephone that AA considered his sick leave of absence and health insurance coverage with HPHC, to have terminated on June 22, 2004, notwithstanding the facts that the Settlement Agreement was signed on July 6, 2004, and recited an effective date of June 29, 2004. Plaintiff received written notices from HPHC and from Conexis (AA's COBRA benefits processor) that his HPHC coverage had expired on different dates – August 1, 2004 according to HPHC and June 24, 2004 according to Conexis. (SOF, para. 12). To say the least, AA had created a situation of complete confusion as to the status of Plaintiff under AA's employee benefit plan by:

(1) Placing Plaintiff on sick leave status as of June 23, 2003;

(2) Terminating Plaintiff's employment without notice on November 21, 2003;

(3) Signing a written agreement on July 6, 2004, with an effective date of June 29, 2004, reinstating Plaintiff to employment and sick leave status;

(4) Agreeing in writing that Plaintiff was eligible for reimbursement under the Plan for medical expenses incurred while Plaintiff was "off payroll" –i.e. from November 21, 2003 through June 29, 2004;

(5) Failing to notify the health insurer HPHC that Plaintiff had been reinstated

5

and was eligible for coverage, and the dates of such eligibility; and

(6) Failing to even inform its own Human Resources Department personnel of the Settlement Agreement and Plaintiff's status in a timely manner.

Plaintiff incurred four additional medical expenses on August 2, August 20 and November 1, 2004 totaling $446.57 directly to AA, since sending them to HPHC would have been futile. (SOF, para. 20).

In early November 2004, Plaintiff submitted a "1st Level Appeal" to AA as Plan Administrator which included non-coverage of the $712.43 in medical expenses incurred between November 23, 2003 and June 29, 2004, and the $446.57 in medical expenses incurred in August and November of 2004. (SOF, para. 14). On November 30, 2004, AA denied this appeal and suggested that Plaintiff file a "2nd Level Appeal" which Plaintiff filed on January 11, 2005. (SOF, para. 15-16). This 2nd Level Appeal was denied by AA on June 5, 2005 (after the commencement of this action). (SOF, para. 16).

In addition to the above listed expenses, Plaintiff incurred additional medical expenses totaling $521.81 which were not submitted to AA since it would have served no purpose in light of AA's position. Finally, AA's actions have caused Plaintiff additional damages in the form of unemployment health insurance costs of $520.00 and increased prescription co-pays under the unemployment health insurance of $276.00. (SOF, para. 17).

With respect to the health insurance benefits which were not paid, Mr. Ward filed a small claims breach of contract action in the East Boston District Court. He filled out the simple small claims complaint form provided by the Court and intended to have the issue heard pro se in the small claims session (as small claims actions are intended).

Defendant AA, instead of attempting to work the matter out or stating its position in the state court small claims session, removed the case to this Court, alleging jurisdiction under ERISA. Now AA seeks summary judgment on the grounds that: (1) Plaintiff's claims are "preempted by ERISA"; (2) Mr. Ward has received reimbursement for all his claims; and (3) because Mr. Ward has failed to exhaust his administrative remedies. Plaintiff submits for the reasons stated below, that Defendant AA's Motion should be denied.

**ARGUMENT**

A.   Defendant's Motion is Unsupported by Admissible Evidence as is required by Rule 56(c), F.R.Civ.P.

In support of its Motion for Summary Judgment, Defendant AA has submitted Statement of Material Facts; a Memorandum of Law; and a compendious pile of seven unidentified, unauthenticated and unverified exhibits. There are no affidavits, depositions, interrogatories, responses to requests for admissions or other documents signed under oath. A party seeking summary judgment must base his assertion that there is no genuine dispute as to material facts on facts contained in or admitted in pleadings, affidavits, and responses to discovery requests in a form admissible at trial. Rule 56(e), F.R.Civ.P.; 11 Moore's Federal Practice, Section 56.14[2][c].

A party seeking summary judgment cannot just rely on documents without identification, authentication or verification under oath by a person with personal knowledge. Documents for which a proper foundation has not been laid cannot support a motion for summary judgment. .Carmona v. Toledo, 215 F.3d 124,131 (1st Cir. 2000) (to be considered on summary judgment, documents must be authenticated by and attached

7

to an affidavit that meets the requirements of Rule 56(e)). See 11 Moore's Federal Practice, Section 56.14[2][c]. Defendant's Exhibit 3 is an unidentified print out. Defendant's Exhibit 6 purports to be documents obtained by Defendant from Plaintiff at a Settlement Conference. (See Defendant's Statement of Material Facts not in Dispute, para. 9). Such information exchanged in a settlement conference is clearly inadmissible. (Fed.R. of Evidence, Rule 408).

Defendant AA removed the instant action to this honorable Court from the East Boston District Court. It should comply with the applicable rules of this Court, including Rule 56, F.R.Civ.P. Accordingly, Defendant's Motion for Summary Judgment should be denied because it has not supported by admissible materials demonstrating the absence of any material fact. See Plaintiff's Motion to Strike Exhibits, filed herewith.

B.  Plaintiff's Complaint Is Not "Preempted" by ERISA

Plaintiff's complaint was a small claims action filed pro se in the East Boston District Court. Defendant AA removed the case to this Court citing jurisdiction under ERISA. It cannot now seek to have a complaint filed on a form in a state court session which encourages pro se litigation of minor matters subjected to the same scrutiny as if Plaintiff had filed a complaint through an attorney. Clearly the complaint puts Defendant AA on notice as to what is at issue – a failure to provide health benefit coverage as American Airlines agreed to in the Settlement Agreement. There has been no allowance of a motion to dismiss under Rule 12(b)(6).

In the materials filed by American Airlines in this very case, it identifies itself as the "Plan Administrator". (Defendant's Exh. 4, copies of pertinent pages attached to Plaintiff's SOF). As plan administrator, AA is a fiduciary under ERISA. See 11

8

U.S.C.A. sec. 1002(21). The Settlement Agreement, executed between a Plan Administrator and a plan participant, imposes an obligation on AA, as Plan Administrator, to assure that health insurance coverage was restored to its plan participant, Plaintiff. However, because AA apparently failed to take adequate steps to notify HPHC that Plaintiff's health coverage was reinstated (at least as to medical costs between November 21, 2003 and June 29, 2004), Plaintiff's rights under the Plan were violated. Plaintiff's pro se complaint must therefore be construed as a claim by a participant to recover benefits due under the Plan, or at least to clarify rights under the Plan. Accordingly, the complaint states a cause of action under 28 U.S.C.A. § 1132(a)(1)(B). See Marino v. Continental Casualty Co., 308 F.3d 906, 910 (E.D.Wis.); Perlman v. Comprehensive Disability Protection Plan, 916 F. Supp.843, 844 (N.D. Ill. 1996) (the fact that plaintiff filed state court action without specifically asserting ERISA claim does not warrant dismissal after removal to Federal Court. There is no prejudice to the removing defendant in construing the complaint as a claim for benefits under ERISA).

As Defendant AA acknowledges in its own benefit plan, "ERISA also imposes obligations upon those persons responsible for the operation of plans. Such persons are referred to as "fiduciaries" under the law. Fiduciaries must act solely in the interest of the plan participant, and they must act prudently in the performance of their duties. . . ."

Defendant AA, as plan administrator, agreed in writing to restore Plaintiff's health benefits (1) for the period between November 23, 2003 and June 29, 2004; and (2) for the prospective seven month period after the signing of the Settlement Agreement – i.e. between June 29, 2004 and January 28, 2005. Then as plan administrator, AA

refused to take appropriate steps to insure that all of Plaintiff's health benefits were covered, either retroactively or prospectively. This constitutes a wrongful denial of benefits to a plan participant.

Alternatively, Plaintiff submits that this in fact is not an ERISA claim; but is indeed a claim for breach of a written Settlement Agreement signed by AA. AA's failure as a contracting party, to take steps to insure that Plaintiff's coverage under the health benefit plan was in effect, is a simple breach of contract. This case should be remanded to the East Boston District Court for lack of jurisdiction. See Rule 12(b)(2), F.R.Civ.P.

C.  There is a Genuine Factual Issue as to whether Plaintiff has received reimbursement for all claims

Plaintiff filed eight claims for health benefits between November 21, 2003 and June 29, 2004 as argued by Defendant AA. Plaintiff has submitted an affidavit, on personal knowledge as required by Rule 56(e), that he personally paid $712.43 for these expenses because HPHC told him his coverage was cancelled by AA. See Ward Affidavit paragraph 12 and Exhibits A-H. Plaintiff sent AA four additional claims during the seven month period after June 29, 2004, the effective date of the Settlement Agreement. The total of these claims is $446.57. These are factual issues to be determined through discovery and trial if necessary.

Defendant AA's assertion in footnote 1 on page 4 of its memorandum that it is not a proper party to this action because it is not the plan administrator is squarely belied by its own submission – i.e. Defendant's Exhibit 4 – which unequivocally states that the Plan Administrator of the American Airlines Group Life and Health Benefits Plan.

10

Further, AA instructs participants such as Plaintiff are instructed to contact AA's Human Resources Department for information.

D. <u>Plaintiff has exhausted his administrative remedies under ERISA</u>

This again is a factual issue. As is clear from the Affidavit of Plaintiff and attached exhibits, Plaintiff sent numerous communications, oral and written, to Defendant AA's HR department seeking coverage of medical expenses incurred (1) between November 21, 2003 and June 29, 2004, and (2) after June 29, 2004. Plaintiff was given three different dates by AA, Conexis (AA's COBRA claims processor) and HPHC as to when his coverage terminated. Plaintiff submitted two written appeals to AA as Plan Administrator of the denial of coverage. Plaintiff followed the appellate procedure established by AA, the Plan Administrator. His request for coverage of bills for the seven month period he was off payroll was not even addressed or responded to. His request for coverage for the seven month period on and after June 29, 2005 was denied at both levels of appeal by AA, the Plan Administrator.

Additionally, Defendant relies on communications during settlement conferences (privileged as a matter of law) as requiring further submissions by Plaintiff. This is not part of the administrative appeals requirements. Plaintiff should not be required to appeal again after American Airlines has denied his previous appeals at two levels. AA cannot impose additional administrative requirements during settlement discussions. Further appeals would indeed be futile and inadequate.

Plaintiff is also seeking to recover medical expenses incurred on June 17, 2004 in the amount of $48.16 and on July 15, 2004 in the amount of $473.71 (Ward Affidavit para. 23). Finally, Plaintiff is seeking to recover costs incurred for state supplemented

11

health insurance benefits while on unemployment after AA terminated his employment and prior to his reinstatement ($520 for coverage under the Massachusetts Security Plan) and for additional prescription co-pays under that Plan. (Ward Affidavit para. 23 and Exh. Q and R). In light of AA's refusal to cover other bills, such submission would be futile and not required under ERISA. Drinkwater v. Metropolitan Life Ins. Co., 846 F.2d 721, 86 (1st Cir. 1988); Amote v. Bernard, 618 F.2d 559, 568 (9th Cir. 1980). Plaintiff has demonstrated that he has exhausted his administrative remedies and that further appeals would be futile.

For the foregoing reasons, Plaintiff requests that this Court deny Defendant's Motion for Summary Judgment. Additionally, Plaintiff requests that this Court dismiss this action and remand it to the East Boston District Court for further breach of contract proceedings.

Respectfully submitted,
James J. Ward,
By his attorney,

_____/s/_____
Frank J. Teague, Esq.
Frank J. Teague & Associates
One Liberty Square, 4th Floor
Boston, MA 02109
(617) 350-7700
BB0# 493780

Dated:  February 16, 2006