UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES J. WARD )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>AMERICAN AIRLINES, INC. )<br>)<br>Defendant. )<br>) | Civil Action No.: 05 CV 10239 MEL |

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS

Now comes the Plaintiff, James J. Ward and, pursuant to Local Rule 56.1, submits the following Statement of Material Facts which were either omitted from Defendant's Statement of Material Facts Not in Dispute or are in dispute.

1.  Plaintiff James J. Ward is currently a member in good standing of the Transport Worker's Union of America, Local 507 and has been a member in good standing since 1988. (Affidavit of James J. Ward, para. 3).

2.  Plaintiff commenced his employment with Defendant American Airlines, Inc. ("AA") in 1988. Plaintiff was a ramp supervisor at Logan Airport in 2003 until he was placed on sick leave by AA. Plaintiff was originally placed on sick leave status by American Airlines on April 5, 2003 because he suffers from fibromuscular displasia, a chronic debilitating disease of the arteries. On June 23, 2003, Plaintiff was placed on unpaid sick leave of absence status. Under American Airlines' policies, Plaintiff was entitled to twelve (12) months of continued paid health insurance coverage after being placed on sick leave of absence status – i.e. from June 23, 2003 through June 22, 2004.

(Ward Affidavit para. 4-5). Plaintiff's health insurance through AA was with the Harvard Pilgrim Health Care HMO ("HPHC"). (Ward Affidavit para. 4-5).

3.  After receiving the November 21, 2003 letter from American Airlines terminating his employment (Defendant's Exh. 1), Plaintiff's paid health insurance coverage was discontinued by Defendant AA after five months. Thus Plaintiff received no health insurance coverage from AA for the time period November 21, 2003 through the date of the Settlement Agreement, June 29, 2004. (Ward Affidavit para. 6). Plaintiff and his Union grieved the purported termination as a wrongful termination without cause. (Ward Affidavit para. 8).

4.  Since he was involuntarily terminated, Plaintiff was eligible for unemployment through the Massachusetts Department of Employment and Training. He was also able to purchase minimal health insurance coverage through the Massachusetts Security Plan for 26 weeks at a cost of $20 per week or $520.00. This coverage was inferior to the HPHC coverage. (Ward Affidavit para. 7).

5.  The grievance filed by the Union on Plaintiff's behalf was settled pursuant to the Settlement Agreement between AA, the Union and Plaintiff. (Defendant's Exh. 2). The Settlement Agreement was signed on July 6, 2004 and is dated June 29, 2004. The Settlement Agreement contains, in pertinent part, the following language:

> 1. "Mr. Ward will be reinstated to the position of Fleet Service Clerk Crew Chief (BS) and returned to an unpaid sick leave of absence effective with the signing of this Agreement." . . .
>
> 2. "Mr. Ward will return without back pay to the unpaid sick leave of absence." . . .
>
> 3. "Health benefits will be restored to Mr. Ward effective with the signing of this Agreement." . . .

2

        4.      "Mr. Ward will remain on the leave of absence for as long as the leave will allow." . . . (Ward Affidavit para. 9).

6.     Based on the foregoing language which was prospective in nature, Plaintiff believed that he had seven more months of paid sick leave coverage – i.e. from June 29, 2004 through January 29, 2005. Plaintiff did not construe the Agreement as providing that his health insurance coverage had already expired as of the date of the signing on the effective date of the Agreement. (Ward Affidavit para. 9-11).

7.     Paragraph 3 of the Settlement Agreement also provides:

> "Mr. Ward will be considered eligible to file any benefit claims that have been incurred during the time off payroll and they will be processed in accordance with the terms of the Health Plan."

Plaintiff construed this language as allowing him to recover any unpaid health insurance benefits that had been incurred while he was wrongfully terminated. Thus under the Settlement Agreement Plaintiff considered that he was entitled to reimbursement for health insurance expenses incurred during the period that he was "off payroll" and also to be covered for seven months after he was reinstated. (Ward Affidavit para. 11).

8.     Plaintiff submitted more than seven claims for payment for medical services rendered between November 21, 2003 and June 17, 2004. Defendant's purported summary of claims (Defendant's Exh. 3) is not complete or accurate. After the Settlement Agreement was signed, Plaintiff submitted various bills to the employment health insurer, HPHC, for processing. Defendant claims that seven of the bills were eventually paid by HPHC. Plaintiff disputes this assertion and contends that eight of these bills, including four bills listed on Defendant's Exh. 3 as "never received," were not paid. The total of these eight unpaid bills is $712.43. (Ward Affidavit para. 12

3

and Exh. A – H attached thereto). The reason given by HPHC for not paying the eight bills was that Plaintiff's coverage was cancelled by AA. (See Ward Affidavit, para. 12, exhibit F, p.2). Thus AA, after signing the Settlement Agreement, appears to have not taken steps to assure that HPHC would process Plaintiff's medical bills.

9. After being notified by HPHC that the bills had not been paid because Plaintiff's coverage had been cancelled, Plaintiff contacted various personnel from AA's Human Resources Department in Fort Worth, Texas, and informed them of the problem. Plaintiff also raised questions about the effect of the Settlement agreement on other employment benefits such as short and long term disability coverage, flight benefits and employee stock programs. AA's Human Resources employees stated that they were uncertain about the effect of the Settlement Agreement on Plaintiff's health insurance and other employment benefits. (Ward Affidavit para. 13-16).

10. On or about August 3, 2004, at the request of AA Human Resources Representative Eunice Frost, Plaintiff sent copies of the eight unpaid bills to Ms. Frost, along with a copy of the Settlement Agreement. AA's Human Resources Department apparently did not have a copy, and were unaware of, the settlement agreement. (Ward Affidavit para. 13).

11. Between August 3, 2004 and October 5, 2004, Plaintiff had many telephone conversations with different employees and supervisors in AA's Human Resources Department concerning Plaintiff's medical coverage in light of the Settlement Agreement. Some of these employees indicated that they were unaware of the Settlement Agreement and Plaintiff, on August 17, 2004, faxed another copy to AA's Human Resources Department. (Ward Affidavit para. 15).

4

12. Plaintiff also submitted four additional bills to AA for medical costs totaling $446.57 incurred on August 2, August 20 and November 1, 2004 for determination of eligibility for coverage. Plaintiff did not submit these bills to HPHC because HPHC was not covering previous bills that had been submitted and there was obvious confusion among AA's HR employees as to Plaintiff's status and coverage in light of the Settlement Agreement. (Ward Affidavit para. 20). On or about October 5, 2004, AA informed Plaintiff that his health insurance coverage expired on June 22, 2004, notwithstanding the language of the Settlement Agreement. (Ward Affidavit para. 19-20). Plaintiff received conflicting notices from AA's COBRA processor and HPHC as to the date his health insurance terminated. According to the COBRA processor (Conexis), Plaintiff's health insurance terminated on June 24, 2004. According to HPHC, Plaintiff's health insurance terminated on August 1, 2004. Both of these dates were different from the June 22, 2004 termination date communicated to Plaintiff by AA. (Ward Affidavit para. 19).

13. Defendant AA has identified itself as the "Plan Administrator" under ERISA in its Summary Plan Description. (Defendant's Exhibit 4 – Excerpts identifying AA as Plan Administrator attached hereto). Yet AA's Human Resources employees whom the Plan directed Plaintiff to contact for information expressed uncertainty and confusion, and in some cases unawareness, as to the Settlement agreement an Plaintiff's reinstatement to health insurance coverage thereunder. (Ward Affidavit para. 13-17).

14. In early November of 2004, Plaintiff submitted a "1st Level Appeal" to the Plan Administrator AA concerning the denial of medical coverage during the time period that he was off payroll (November 23, 2003 through July 6, 2004), and for the bills incurred in August and November of 2004. (Ward Affidavit para. 21).

15.     On or about November 30, 2004, Plaintiff received a letter from AA entitled "Denial 1st Appeal". (Ward Affidavit para. 22 and Exh. O). In this denial, AA did not address payment of the eight medical bills incurred between November 21, 2003 and July 6, 2004. With respect to the bills incurred in August and November of 2004, Defendant stated that Plaintiff's twelve months of sick leave benefits terminated on June 22, 2004 notwithstanding the fact that he had been on terminated status for seven of those months and the date (June 29, 2004) and above cited language of the Settlement Agreement.

16.     As instructed in the letter denying his 1st Level appeal, Plaintiff pursued a "2nd Level Appeal" with the Plan Administrator, AA, with respect to both bills incurred between November 23, 2003 and June 29, 2004, and bills incurred after June 29, 2004. On January 11, 2004, Defendant acknowledged receipt of the 2nd Level Appeal. This 2nd Level Appeal was denied by AA on or about June 3, 2005. (Ward Affidavit, para. 22 and Exhibit P).

17.     Plaintiff incurred other two other bills for medical expenses which he did not submit to AA because it would have been futile in light of AA's refusal to cover other bills. The total of these two bills was $521.81. (Ward Affidavit para. 23). Finally, Plaintiff had to pay $520 for coverage under the Massachusetts Unemployment Plan which was inferio to HPHC and resulted in higher prescription costs of $276.00. (Ward Affidavit para. 23).

18.     On January 10, 2005, Plaintiff commenced an action in the East Boston District Court Small Claims section seeking to recover medical bills totaling $2,000 or less. The gravamen of Plaintiff's claim was that AA had breached the Settlement Agreement by not assuring that he was returned to coverage under the health insurance

6

plan so that all of his medical bills would be paid. Defendant removed this breach of contract claim to the United States District Court, asserting jurisdiction under ERISA.

19.     Plaintiff, in submitting his 1st and 2nd Level Appeals to AA, has exhausted internal administrative remedies for the bills at issue in this case.

>
> Respectfully submitted,
> Plaintiff James J. Ward
> By his attorney,
>
> _____/s/_____
> Frank J. Teague, Esq., BBO#493780
> Frank J. Teague & Associates
> One Liberty Square, 4th Floor
> Boston, MA  02109

Dated: February 16, 2006

# PLAN ADMINISTRATION

**PLAN ADMINISTRATOR:**
American Airlines, Inc.
Mailing address:
Mail Drop 5187-HDQ
P. O. Box 619616
DFW Airport, Texas 75261-9616

STREET ADDRESS: (Do not mail to this address)
4333 Amon Carter Blvd.
Fort Worth, Texas 76155

**CLAIMS PROCESSOR:**
The claims processors for each plan vary and are listed in the Important Contacts section.

**TRUSTEE:**

State Street Bank & Trust
200 Newport Avenue
North Quincy, Massachusetts 02171

**EMPLOYER ID NUMBER:**
13-1502798

**AGENT FOR SERVICE OF THE LEGAL PROCESS:**
Managing Director, Total Rewards
American Airlines, Inc.

Mailing address:
Mail Drop 5112-HDQ
P. O. Box 619616
DFW Airport, Texas 75261-9616

Street address: (Do not mail to this address)
4333 Amon Carter Blvd.
Fort Worth, Texas 76155

Service of legal process may also be made on the Plan Administrator.

# PLAN INFORMATION

*[Handwritten annotation: Attachment A to Plaintiff's SOF (Excerpts from Defendant's Exh. 4)]*

YOUR RIGHTS UNDER "ERISA"

For general information contact:

HR Employee Services
MD 5141-HDQ
American Airlines, Inc.
P. O. Box 619616
DFW Airport, Texas 75261-9616
(800) 447-2000

E-mail to: Employee.Services@aa.com

Web Address: jetnet.aa.com. (Select "Benefits and Pay" from the *Jetnet* main landing page).

For information about your claims, contact the appropriate claims processor or benefits plan administrator at the addresses and phone numbers located in the Important Contacts section of this guide.

# YOUR RIGHTS UNDER "ERISA"

This section contains statements of your rights under the Employee Retirement Income Security Act (ERISA) of 1974, as amended from time to time. This legal notice follows the format provided by federal regulations and summarizes your rights under the law.

As a participant in a plan governed by ERISA, you have been given information about such plan coverages and benefits.

To help plan participants resolve disputes and to avoid inconvenience or delay of payment for eligible expenses, the plan provides descriptions of claim and appeal procedures, as well as addresses, telephone numbers, and other references where you may obtain additional information and assistance.

All participants in ERISA plans may:

- Examine all plan documents and copies of all documents filed with the U.S. Department of Labor, such as the annual report and plan description. These documents can be examined without charge in the plan administrator's office.

- Request in writing all plan documents and other plan information from the plan administrator. The plan administrator may make a reasonable charge for the copies. Any materials requested should be received within 30 days of receipt of your request unless the materials are not sent because of circumstances beyond the control of the plan administrator.

The plan administrator makes available all documents required by law, including a summary of the plan's Annual Financial Report. Additional information is also provided which may be helpful to you in making the best use of your benefits.

ERISA also imposes obligations upon those persons responsible for the operation of the plans. Such persons are referred to as "fiduciaries" under the law. Fiduciaries must act solely in the interest of the plan participants, and they must act prudently in the performance of their duties. Fiduciaries may be removed for violating these rules and are required to make good any losses they have caused the plans.

In carrying out their respective responsibilities under the plan, the plan administrator and other plan fiduciaries shall have discretionary authority to interpret the terms of the plan and to determine eligibility for and entitlement to plan benefits in accordance with the terms of the plan. Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect under the plan, unless it can be shown that the interpretation or determination was arbitrary and capricious.

No one may discharge you, or otherwise discriminate against you, to prevent you from receiving a benefit or from exercising rights under ERISA.

If your claim for benefits is denied, you must receive a written explanation of the reason. You have the right to a review and reconsideration of your claim. If your claim is improperly denied, or if fiduciaries are misusing plan money, you have the right to file suit in a federal or state court. You will be responsible for the cost of any legal action, although the court may require the other party to pay a part of or all of the legal costs, including attorney's fees, if you are successful in your lawsuit. However, if you are not successful in your lawsuit for example, if the court finds your claim is frivolous, the court may order you to pay all legal costs.

If you have any questions about this statement or about your rights under ERISA or the Health Insurance Portability and Accountability Act of 1996 (HIPAA), contact the plan administrator or the nearest area office of the Pension and Welfare Benefits Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Pension and Welfare Benefits Administration, U.S. Department of Labor, 200 Constitution Avenue, N.W., Washington D.C. 20210.

| PLAN NAME | PLAN NUMBER |
|---|---|
| The Group Life and Health Benefits Plan for Employees of Participating AMR Corporation Subsidiaries<br><br>This plan includes:<br><br>- Standard Medical Plans<br>- Health Maintenance Organizations<br>- Point-of-Service Plan<br>- Dental Plan<br>- Life Insurance<br>- Accidental Death & Dismemberment<br>- Special Risk Accident Insurance<br>- Special Purpose Accident Insurance<br>- Optional Short Term Disability Plan<br>- Vacation Buying<br>- Health Care Flexible Spending Account<br>- Dependent Day Care Flexible Spending Account<br>- Retiree Medical Plan Coverage<br>- Management Personal Accident Insurance | 501 |
| The Supplemental Medical Plan for Employees of Participating AMR Corporation Subsidiaries | 503 |
| Long Term Care Insurance Plan for Employees of Participating AMR Corporation Subsidiaries | 510 |
| Spectera Vision Insurance Plan | |
| American Airlines, Inc. Retiree Dental Insurance Plan | 512 |

**PLAN YEAR:**
January 1 through December 31

**PARTICIPATING SUBSIDIARIES:**

- American Airlines, Inc.
- TWA LLC

**ABOUT THIS GUIDE**

This online Employee Benefits Guide ("guide") is the Summary Plan Description (SPD) and legal plan document for the Group Life and Health Benefits Plan for Employees of Participating AMR Corporation Subsidiaries ("the plan"), the Supplemental Medical Plan for Employees of Participating AMR Corporation Subsidiaries, the American Airlines, Inc., the American Airlines, Inc. Retiree Dental Insurance Plan, and the Long Term Care Plan for Employees of Participating AMR Corporation Subsidiaries.

The provisions of this online guide apply to eligible employees of the participating subsidiaries of AMR Corporation and TWA LLC employees on the United States payroll, spouses, dependents, and surviving spouses who elect coverage under Flexible Benefits.

In our efforts to provide you with full multi-media access to benefits information, American Airlines, Inc., has created online versions of the Summary Plan Descriptions for our benefit plans. The Summary Plan Description is also the formal legal plan document. If there is any discrepancy between the online version and the official hard copy of this guide, then the official hard copy, plus official notices of plan changes/updates will govern.